```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


TERRY GIBSON                            CIVIL ACTION


VERSUS                                  NO: 16-2868


LESON CHEVROLET COMPANY,                SECTION: "J" (3)
INC.
```

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 19)** filed by Leson Chevrolet Company, Inc ("Defendant"), an opposition thereto filed by Terry Gibson ("Plaintiff") (Rec. Doc. 25), a reply filed by Defendant (Rec. Doc. 26), and a sur-reply (Rec. Doc. 30) filed by Plaintiff. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an employment dispute between Plaintiff, an African American male, and Defendant, a company that operates a car dealership. Plaintiff began working for Defendant as a sales representative in January 2012. (Rec. Doc. 1 at 2.) He alleges that during the course of his employment, management at the dealership exhibited preferential treatment to Caucasian sales representatives. For example, Plaintiff alleges that Defendant prohibited African American representatives from congregating on the sales floor to wait on customers but allowed Caucasian

1

representatives to do so. (Rec. Doc. 1 at 2.) On November 24, 2012, Plaintiff resigned his employment. (Rec. Doc. 19-2 at 2.) Plaintiff asserts that he resigned because of the disparate treatment that he and other African American employees received on the job. (Rec. Doc. 25 at 2.)

On May 6, 2013, Plaintiff returned to work for Defendant as a sales representative. (Rec. Doc. 19-2 at 2.) Plaintiff alleges that during this second stint of employment he was routinely passed over for promotions. (*See* Rec. Doc. 1 at 2-3.) On November 6, 2014, after being passed over for a promotion to the finance manager position, Plaintiff complained to Michael Brenner, Defendant's general sales manager. Plaintiff avers that he told Brenner that he believed Defendant failed to promote him because of his African American race and informed Brenner that he was going to resign his employment. (Rec. Doc. 1 at 3.) That same day, Brenner and Lisa Rebowe, the dealer and owner of the dealership, decided to promote Plaintiff to the finance manager position, and Plaintiff accepted the position. (Rec. Doc. 25 at 3.)

Plaintiff contends that his job performance as finance manager was excellent and that he never received any reprimand from his supervisors, either written or otherwise. (Rec. Doc. 1 at 3.) Defendant, however, argues that shortly after the promotion, Plaintiff failed to perform duties that were expected of finance managers. (Rec. Doc. 19-1 at 3.) Additionally,

2

Defendant asserts that on several occasions during Plaintiff's tenure as finance manager, the finance companies charged back amounts on sales handled by Plaintiff. *Id*. at 3-4. According to Defendant, these charge backs were often the result of mistakes made by Plaintiff. *Id*. at 4. Defendant also asserts that Plaintiff would periodically re-allocate the amount of revenue from the sale of a vehicle in a way that would benefit Plaintiff, but not necessarily the dealership.[1] (Rec. Doc. 19-1 at 4.) Defendant states that Plaintiff did not have the unilateral authority to shift the revenue in this way. *Id*.

Defendant asserts that in January 2015, Brenner verbally instructed Plaintiff to stop re-allocating the revenue for the sale of vehicles, but that Plaintiff continued this practice. (Rec. Doc. 19-1 at 5.) Defendant further contends that because the verbal counseling seemed to be ineffective, Brenner prepared a written warning notice. (Rec. Doc. 19-1 at 5; Rec. Doc. 19-2 at 3.) It is undisputed that Plaintiff did not sign the warning notice. (Rec. Doc. 19-2 at 4.) The notice, which is dated January 22, 2015, includes a handwritten notation stating that "Employee refused to sign." (Rec. Doc. 19-8.) Although the "Supervisor

---

[1] Defendant describes this practice as "reducing the amount of revenue [Defendant] had negotiated to receive on the front end of the deal (*i.e.*, the amount the customer agreed to pay), to enable [Plaintiff] to sell a customer a product on the back end of the deal." (Rec. Doc. 19-1 at 4.) Defendant argues that shifting revenue from the front end of the deal to the back end of the deal is not preferable because not all revenue made from sales at the back end of the deal is secured by the vehicle. *Id*.

3

Signature" line is signed by Brenner, the "Employee Signature" line is blank. *Id.* Another line, titled "Next level of supervision or witness signature" is also blank. *Id.*

Plaintiff "categorically denie[s] receiving any verbal or written counseling during his entire tenure as finance manager, including any such written warning from Brenner." (Rec. Doc. 25 at 3.) Defendant, on the other hand, contends that Brenner presented the notice to Plaintiff, who refused to sign it. (Rec. Doc. 19-1 at 5.) Defendant further contends that Plaintiff's refusal to sign the warning notice resulted in Brenner and Rebowe determining that Plaintiff was insubordinate. *Id.* at 4. Defendant argues that at that time, Brenner and Rebowe decided to replace Plaintiff as finance manager and began searching for another qualified person. *Id.* at 5-6. In May 2015, Defendant hired Ronea Wood, a Caucasian female, to replace Plaintiff as finance manager. *Id. at 4.* Defendant terminated Plaintiff's employment on May 5, 2015, after hiring Ronea Wood. (Rec. Doc. 19-1 at 6.)

On or about August 22, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Rec. Doc. 1 at 2.) The EEOC issued a Right to Sue on or around February 24, 2016, and Plaintiff filed this lawsuit on April 6, 2016. *Id.* The complaint alleges that Defendant intentionally discriminated against him on the basis of race and retaliated against him in connection with the termination of his

4

employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e *et seq.*, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law. (Rec. Doc. 1.) On February 14, 2017, Defendant filed the instant motion for summary judgment which is now before the Court.

## PARTIES' ARGUMENTS

Defendant argues that it is entitled to summary judgment on Plaintiff's claims of race discrimination and retaliation. (Rec. Doc. 19-1.)[2] Defendant argues that it terminated Plaintiff's employment for insubordination after Plaintiff refused to sign the written disciplinary notice on January 22, 2015. Defendant further argues that this is a legitimate, nondiscriminatory reason for the termination, and that Plaintiff has failed to demonstrate that it was pretextual. Defendant also argues that Plaintiff's retaliation claim should be dismissed because Plaintiff cannot prove a causal connection between his complaint of discrimination

---

[2] Defendant's motion includes other arguments in addition to those discussed in the body of this Order and Reasons. For instance, Defendant argues that Plaintiff's failure-to-promote claims are time-barred under all three statutes. *Id.* at 7. Defendant also asserts that certain allegations in Plaintiff's complaint are not "adverse actions" within the meaning of the law and should therefore be dismissed. Plaintiff does not dispute either point, but clarifies that he is not bringing separate claims related to allegations that Defendant failed to promote him or provide sufficient sales leads. (Rec. Doc. 25 at 1.) Instead, Plaintiff states that he brings his claims in connection with the termination of his employment in May 2015, and that "these previous acts of discrimination . . . are intended for use as background evidence in support of Plaintiff's claims." (Rec. Doc. 25-1 at 1 n.1); *see AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). Because Defendant's arguments discussed in this note are not controverted, they bear no further discussion.

on November 6, 2014 and his termination nearly six months later. Even if Plaintiff could establish a prima face claim of discrimination, Defendant asserts that it is still entitled to summary judgment because it had a legitimate, non-discriminatory reason for terminating him.

In opposition, Plaintiff argues that Defendant's proffered reason for Plaintiff's termination is false, unworthy of credence, and pretextual.  Plaintiff argues that he never received any written or verbal disciplinary notice regarding his job performance while he was finance manager.  Thus, he argues that he could not have been insubordinate for failing to sign the disciplinary notice.  Plaintiff also argues that Defendant terminated his employment because he complained to Brenner about racial discrimination at the workplace.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or

6

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or

referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

I. Discrimination Claim

Plaintiff's racial discrimination claim alleges that Defendant terminated his employment because of his African American race. The analysis applied to claims under Title VII is also used for claims of racial discrimination in employment cases under 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law. *Decorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). Accordingly, the same test will determine the sufficiency of Plaintiff's distinct discrimination claims.

Title VII prohibits an employer from discharging an employee because of his race. 42 U.S.C. § 2000e-2. "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (internal citations omitted). The plaintiff can establish intentional discrimination by presenting either direct or circumstantial evidence. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). "Circumstantial evidence of discrimination is that based on inference and not on personal

knowledge or observation." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 n.41 (5th Cir. 2016) (internal citations omitted). The employee's burden of proof does not change based on the type of evidence used, but "the parties' respective burdens of production differ." *Id.* at 235. Here, Plaintiff only presented circumstantial evidence of racial discrimination.

When a Title VII discrimination claim is based on circumstantial evidence, the Court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04) (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The first step in this framework requires the employee to present a prima facie showing of discrimination. *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). To establish a prima facie case of discrimination, Plaintiff must demonstrate that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (internal citation omitted). Here, Defendant does not dispute that Plaintiff produced evidence sufficient to prove each of the elements of prima facie discrimination. Plaintiff has established that (1) he belonged to a protected class because he was African American, (2)

he was qualified for the finance manager position, (3) Defendant took an adverse employment action against him by terminating him, and (4) Defendant treated employees who were not African American more favorably because it replaced him with a Caucasian employee.

Once the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Goudeau v. Natl. Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). To satisfy this burden, Defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for [the adverse employment action]." *Heinsohn*, 832 F.3d at 236 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). This step does not involve a credibility assessment. *Id.* Here, Defendant met the burden by identifying Plaintiff's insubordination as the nondiscriminatory reason for the termination. Defendant produced deposition testimony by Brenner stating that Defendant terminated Plaintiff because he refused to sign the written disciplinary notice on January 22, 2015. Therefore the analysis proceeds to the third step.

At the third step, the burden shifts back to the employee, who must produce evidence, or rely on evidence already produced, that contests or refutes the employer's evidence of a legitimate, nondiscriminatory reason. *Id.* at 236-37. A plaintiff can establish that the employer's purported reason is pretextual by either by

10

producing "evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). To prove that the explanation is false or unworthy of credence, the employee must prove that the proffered explanation is not the real reason for the adverse employment action. *Id*. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Id.*

Plaintiff argues that there is a material question of fact as to whether the evidence provided by Defendant adequately supports its purported reason for termination. Generally, an employer will satisfy its burden by providing "contemporaneous written documentation" rather than after-the-fact documentation. *Heinsohn*, 832 F.3d at 237. Other than the unsigned written warning notice from January 22, 2015 and deposition testimony by Brenner that Plaintiff refused to sign it, Defendant produced very little other evidence to support the argument that it terminated Plaintiff for insubordination.[3] Therefore, Defendant's crucial contemporaneous evidence is the written warning notice. As

---

[3] Defendant also points to the separation notice that an employee for Defendant submitted on May 11, 2015, nearly a week after Plaintiff was fired. (Rec. Doc. 19-9.)  The separation notice states that the reason for separation is "insubordination." *Id*.

discussed above, Defendant argues that it was Plaintiff's purported refusal to sign the written warning that caused his supervisors to deem him insubordinate and make the immediate decision to terminate him.[4]

Plaintiff uses his deposition testimony denying that he ever received a verbal or written warning to call into question the veracity of Defendant's purported nondiscriminatory reason for termination. Defendant argues that Plaintiff's deposition testimony is self-serving and insufficient to create a factual issue. However, Defendant's only strong evidence of Plaintiff's insubordination comes from Brenner's deposition testimony; accordingly, Brenner's testimony is equally self-serving and unsupported. The Court cannot reject Plaintiff's statements as self-serving but accept Defendant's. This approach would be

---

[4] Plaintiff draws the Court's attention to Defendant's EEOC position statement (*See* Rec. Doc. 25-9), and argues that the reasons for terminating Plaintiff cited in the position statement differ from the reasons provided in this motion for summary judgment. The Court acknowledges that although the position statement provides essentially the same factual history as the motion for summary judgment and mentions the word "insubordination," the position statement itself provides a different theory for the termination. It states: "[Defendant] terminated [Plaintiff] because he abused his position as Finance Manager to benefit himself to the detriment of the sales force and the company and refused to change his behavior after receiving verbal and written warnings." (Rec. Doc. 25-5 at 8.) Though related to the reasons cited for termination in the motion for summary judgment, the reasons for termination cited in the position statement suggests a lack of consistency. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237 (5th Cir. 2015) ("We have [] found an employer's rationale suspect where it had not remained the same between the time of the EEOC's investigation and the ultimate litigation.") (internal citations omitted).

"inconsistent with fundamental rules governing summary judgment." *Heinsohn*, 832 F.3d at 245. "By choosing which testimony to credit and which to discard, '[a] court improperly 'weigh[s] the evidence' and resolve[s] disputed issues in favor of the moving party." *Id.* (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015)). It is not the Court's role to make credibility determinations at the summary judgment stage. *Id.* Instead, the Court "must disregard all evidence favorable to the moving party that the [finder of fact] is not *required* to believe." *Id.* (quoting *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 407–408 (5th Cir. 2011)) (emphasis in original). For these reasons, Plaintiff has produced sufficient evidence at the summary judgment stage to create a genuine issue of material fact as to whether Defendant's stated reason for termination was merely pretextual.

   II.   Retaliation Claim

    Plaintiff's second claim is that Defendant retaliated against him by terminating his employment for reporting race discrimination. In particular, Plaintiff identifies the complaint he made to Brenner on November 6, 2014 about being passed over for promotions as the employee action that led to the retaliation. As mentioned above, Plaintiff was offered the promotion for which he was initially passed over on the same day he made the complaint.

13

And it was not until May 5, 2015 that Plaintiff's employment was terminated.

Under Title VII it is unlawful for employers to discriminate against employees who have "opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). A retaliation claim "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). Where, as here, the plaintiff only provides circumstantial evidence of causation, the Court applies the *McDonnell Douglas* burden shifting framework. *Daniel v. Universal ENSCO, Inc.*, 507 F. App'x, 434, 437 (5th Cir. 2013). A plaintiff bringing a Title VII retaliation claim must establish a prima facie case by showing that (1) the plaintiff engaged in a Title VII protected activity; (2) the plaintiff was subjected to adverse employment action; and (3) the adverse action was causally connected to the protected activity. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 367 (5th Cir. 2013).

Defendant contends that Plaintiff has failed to establish any causal connection between the complaint of race discrimination and his termination. The causal link can be demonstrated in two ways: (1) by direct evidence of retaliatory motive or (2) through circumstantial evidence that creates a rebuttable presumption of

14

retaliatory motive. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 377 (5th Cir. 2007). "Without direct evidence, the causation element can be difficult to prove." *Pryor v. MD Anderson Cancer Ctr.*, 495 F. App'x 544, 547 (5th Cir. 2012). The Court considers three factors in determining whether the plaintiff has made a prima facie showing of causation: "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).

The most important causation factor in this case is the lack of temporal proximity between the employee's conduct and his termination. Six months lapsed between Plaintiff's complaint of discrimination in November 2014 and his ultimate termination in May 2015.[5] The Fifth Circuit has noted that district courts in this circuit have allowed an inference of causation when as many as four months elapsed, *see Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001), but also suggested that such a period may be too long to allow for such an inference. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 378 (5th Cir. 2007) ("The Supreme Court, however,

---

[5] Plaintiff notes that in Brenner's deposition he testified that he made the decision to terminate Plaintiff on January 22, 2015. Thus, Plaintiff argues that only three months commenced between Plaintiff's action and Brenner's decision to terminate Plaintiff's employment. If the Court were to adopt this position, it would confirm Defendant's argument that he did not terminate Plaintiff as a retaliatory action, but because of the events that transpired on that day regarding the written warning notice.

15

has cited approvingly other circuit court cases that found three and four month periods too long to allow an inference of causation.") (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001)).  A long interval between the employee's conduct and the termination "tend[s] to undermine the inference that the discharge was retaliatory." *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995).

The other causation factors are in dispute.  The parties disagree about whether Defendant followed typical policy and procedures and whether Defendant had provided Defendant with warnings.  However, "[c]onclusions [of retaliation] drawn from a lack of suspicious timing are less compelling than those drawn from the existence of suspicious timing." *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442–43 (5th Cir. 2007).  It is implausible that a termination occurring six months after Plaintiff complained of racial disparities Defendant's promotion practices has any causal retaliatory connection.  This conclusion is bolstered by the fact that Defendant promoted Plaintiff the very day he made the complaint.  Ultimately, Plaintiff cannot make a prima facie claim of causation, and the motion for summary judgment is granted on this claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 19)** is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's retaliation claim is **DISMISSED**.

New Orleans, Louisiana this 29th Day of March, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE